# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MIN CHANG, Individually and On Behalf of All
Others Similarly Situated,

        Plaintiff,

vs.

VIISAGE TECHNOLOGY INC, BERNARD
BAILEY, WILLIAM AULET, AND DENIS K.
BERUBE,

        Defendants.

MAGISTRATE JUDGE_____

CIVIL ACTION NO. 05 10537 MLW

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

RECEIPT # _____ 62925
AMOUNT $ _____
SUMMONS ISSUED____1____
LOCAL RULE 4.1____
WAIVER FORM____
MCF ISSUED____
BY DPTY. CLK.____
DATE____3/23/2005____

Plaintiff, Min Chang ("Plaintiff"), individually and on behalf of all other persons similarly

situated, by his undersigned attorneys, for his complaint against defendants, alleges the following

based upon personal knowledge as to himself and his own acts, and information and belief as to all

other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which

included, among other things, a review of the defendants' public documents, conference calls and

announcements made by defendants, United States Securities and Exchange Commission ("SEC")

filings, wire and press releases published by and regarding Viisage Technology, Inc. ("Viisage

Technology" or the "Company") securities analysts' reports and advisories about the Company, and

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support

will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal class action on behalf of persons who purchased or otherwise acquired the securities of Viisage between October 25, 2004 and March 2, 2005 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, Min Chang, as set forth in the accompanying certification, incorporated by reference herein, purchased Viisage securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant Viisage is a Delaware corporation with its principle executive offices located at 296 Concord Road, 3rd Floor, Billerica, MA 01821.

8.    Defendant Bernard Bailey ("Bailey") was, at all relevant times, the Company's Chief Executive Officer and Director.

9.    Defendant William Aulet ("Aulet') was, at all relevant times, the Company's Chief Financial Officer.

10.    Defendant Denis K. Berube ("Berube") was, at all relevant times, the Company's Chairman.

11.    Defendants Bailey, Aulet and Berube are collectively referred to hereinafter as the "Individual Defendants."  During the Class Period, each of the individual defendants, as senior executive officers and/or directors of Viisage was privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Viisage, by virtue of his high-level position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.    As officers and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty

to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Viisage, each of the Individual Defendants had access to the adverse undisclosed information about Viisage financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Viisage and its business issued or adopted by the Company materially false and misleading.

16.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is

responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

17.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Viisage securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Viisage business, operations, management and the intrinsic value of Viisage securities; and (ii) caused Plaintiff and other members of the Class to purchase Viisage securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Viisage between October 25, 2004 and March 2, 2005, or the Class Period, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Viisage's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by Viisage or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Viisage; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

23.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Viisage delivers technology identity solutions for governments, law enforcement

agencies and businesses concerned with enhancing security, reducing identity theft, providing access

control and protecting personal privacy. The Company's business involves two related segments:

secure credentials and biometrics. The secure credentials solutions segment involves the design,

development, marketing and implementation of integrated software and hardware solutions that

produce identification credentials utilizing face recognition and other biometric technologies. The

focus of the biometric technology solutions segment is primarily on applications designed to deter

criminal and terrorist activities, including government research and development contracts.

### Materially False And Misleading
### Statements Issued During The Class Period

25.     The Class Period Commences on October 25, 2004. At that time, Viisage announced

results for the third quarter ended September 26, 2004. More specifically, the Company, in its press

release, stated:

> Revenues for the third quarter of 2004 totaled $19.91 million,
> marking the fifth consecutive quarter in which revenues set a
> Company record, up 97% from $10.11 million in the comparable
> period last year, as reported in accordance with the change in
> accounting principle described below. The net income for the third
> quarter of 2004 was $198,000, or $0.00 on a basic and diluted share
> basis, compared to a net loss of $389,000, or $0.02 per basic and
> diluted share, for the third quarter of 2003. The Company's third
> quarter results do not reflect any contribution from the recent
> acquisition of Imaging Automation (iA); financial results for iA and
> Viisage will be combined from October 5, 2004, the date the
> transaction was completed.

26.     Commenting on these results, defendant Bailey stated:

Viisage made important progress, financially and operationally, during the third quarter, as we expanded our product suite for identity solutions and produced a profitable quarter[.]...We have greater traction with existing and prospective customers in a wide range of markets, and feel that we are well positioned to continue our growth. We were pleased with the reception given Viisage by the financial community despite the difficult market environment that existed during our recently completed follow-on offering, and plan to use the proceeds to further build our market leadership in identity solutions. With the addition of critical proofing and document authentication capabilities from iA, we are offering customers a comprehensive technology solution that truly addresses their needs.

The Company's performance for the third quarter, combined with our accomplishments so far this quarter, give us the confidence to increase both our revenue and EBITDA guidance for 2004.

27.    Commenting on these results, defendant Aulet added:

Viisage continued to significantly improve its financial performance and strengthen its balance sheet in the past quarter while maintaining the necessary financial flexibility. Our strong revenue performance coupled with careful expense management enabled us to produce our first profitable quarter on a GAAP basis in several years. At the same time, our focus on growing EBITDA (earnings before interest, taxes, depreciation and amortization) proved successful as it increased to $3.4 million this past quarter, from $1.5 million in the same quarter last year. Lastly, we are pleased with the terms of our acquisition of Imaging Automation, since we believe this transaction will be accretive on a net income, EBITDA and EPS basis in 2005, and will help us continue to drive revenue and profit growth not only this year, but for many years to come.

28.    On October 26, 2004, Viisage held a conference call to discuss its financial results announced on October 25, 2004. During the call, defendant Bailey, in relevant part, stated:

We are certainly exceedingly pleased with our results for this quarter. For the fifth straight quarter we are reporting record quarterly revenues. At $19.9m our revenues are up 97 percent on a year-over-year basis. I am also pleased to report that we produced a profitable quarter with earnings of almost $200,000. At the same time, we have generated a record level of EBITDA. At $3.4m this

quarter our EBITDA was up more than 110 percent from the previous year's quarter.

These financial results are certainly a testament to our continued focus on delivering profitable revenue growth for our shareholders, while effectively managing our cost structure. I also think these results speak very well to the momentum we are building, both for the rest of this year, as well as leading us into 2005.

We have built Viisage into a leading identity solutions provider, offering customers a full life cycle of identity solutions. With the transformation of our Company through both organic development, as well as key acquisitions we are well on our way to becoming the premiere provider in this marketplace, both domestically and internationally.

The results we have already produced and the opportunities ahead of us provide us with the confidence today to increase our 2004 annual revenue and EBITDA guidance. Bill will detail these guidance numbers a little later on in the call.

\*\*\*

This past quarter we also put a great deal of effort into improving the long-term financial health of our Company. Our follow-on offering allowed us to increase our cash position from $12.6m to more than $37m, while at the same time reducing our outstanding debt from $29.8m to $19.2m. This improved financial health has allowed us to secure a $25m line of credit with the leading financial institution, Citizens Bank, which will give us even greater financial flexibility to build our Company going forward.

29.     Additionally, defendant Aulet, in relevant part, stated:

As Bernard mentioned, for the third quarter of 2004 we experienced robust revenue growth. Revenues for the recently completed quarter were $19.91m, a fifth consecutive record quarter. This represents 97 percent increase year-over-year basis and 22 percent increase on a quarter-over-quarter basis. This top line growth was driven by our Viisage Federal Solutions Group in Washington, D.C., and particularly the Department of Defense Common Access Program. We shipped over $5m of common access card production systems in

the quarter which represents significant revenue to the Company in this quarter.

In addition, these systems will provide the foundation for ongoing higher margin revenue streams in the future, specifically in the area of consumables. The gross margin percentage on these production systems was within the mid-teens range and, therefore, are adding to the absolute gross margin they did go down the overall gross margin percentage for the Company in the quarter.

Of the 97 percent year-to-year growth rate, organic growth represented approximately one-third demonstrating that not only are our acquisitions already contributing significantly to our top line growth but we are experiencing healthy organic growth in our core business, as well.

Equally as important to our top line growth is our net income. We are proud to announce the first GAAP profit in three years with $198,000 of net income, or essentially breakeven on a basic and diluted share basis, demonstrating our commitment to attaining this important long-term goal. We've been steadily improving our performance in the bottom line, and in the first quarter we had a loss of slightly over $1m. Last quarter this has been reduced to a loss of $17,000. This quarter we crossed the breakeven line to be net income positive. For a year-to-year comparison purposes in the last year's third quarter the Company recorded a loss of $390,000 or 2 cents per share on a basic and diluted basis. We are pleased with our progress here.

***

The gross profit margins we indicated on the last conference call that they would decrease due to the Department of Defense, our production systems, anticipated in this quarter. As projected, this became a reality this quarter as our gross margins decreased to 28 percent from 31 percent in this year's second quarter, and down from a record 33 percent in last year's third quarter. This is a reflection of product mix. We anticipate a substantial number of tax reductions to shift in the fourth quarter, as well, albeit at a slightly lower total volume.

Even so, we see that investments we have made in improving our product offerings and efficiencies in delivery should make this just completed quarter a temporary depression in gross margin percentage.

We are confident that these efforts to increase gross margin going forward will pay dividends in the near term. In fact, as we look forward to our pipeline for the next quarter and the productivity improvements we have made even with the significant component of common access card production systems in the quarter's revenue we believe we are poised for significant overall gross margin improvement that will not only return us to the margins we saw earlier this year but allow us to potentially exceed them.

\*\*\*

As Bernard mentioned, we're pleased to announce as well today that we have received a commitment letter from a major bank for a $25m line of credit to replace our existing bank facilities. This new arrangement will not only give us valuable flexibility but will also reduce our rates of borrowing, significantly simplify our covenants, and increase yields on our money in the bank, all while making our G&A operations more productive by providing services locally and worldwide to meet our rapidly evolving needs.

In the fourth quarter we will be able, if we so choose, to reduce our outstanding debt quite significantly, and after paying off early prepayment fees save approximately $600,000 a year in interest expense. We will be monitoring this closely, and our actions will be affected directly by our M&A program. But in any case, we have new financial flexibility that will be very valuable to support our growth, as well as being highly cost effective.

\*\*\*

Now, I'd like to discuss our annual guidance for 2004. In early May, based upon the strength of our pipeline business we raised annual guidance to 60m to 63m, and our EBITDA guidance for 2004 to 11m to 12m. At this time, we are comfortable raising this guidance yet again to revenue of $66m to $68m for 2004, up approximately 10 percent, and EBITDA of 11.5m to 12.5m for the year.

30.    On December 27, 2004, Viisage provided the following statement regarding the summary judgment ruling issued by a superior court in Fulton County, Georgia regarding the digital drivers' license contract between Viisage and the state of Georgia:

Viisage learned today that the Georgia court has issued a summary judgment ruling permitting the state to move forward in its rebid of the state's drivers' license contract and permitting Viisage to compete to retain its contract with the state. We are pleased that the state will finally be permitted to begin the rebid process and that the judge has agreed with us and the state on virtually all aspects of the summary judgment motions," said Bernard Bailey, president and CEO, Viisage. "Contrary to statements made by our competitor in an earlier press release, the court did not disallow the 2002 award of the contract to Viisage. The court merely acknowledged that the state and Viisage had entered into a settlement agreement under which the state terminated the drivers' license contract with Viisage for convenience and was to pay Viisage a $2.5 million settlement payment, all as previously announced by Viisage. However, the court has ruled that the state cannot pay $2 million of that settlement payment. Without this payment, Viisage believes that either the settlement agreement with the state is not effective and that Viisage's contract with the state remains in place or that Viisage's initial claim for an $8.2 million settlement payment is revived. While we are very pleased with the overall result, we are disappointed and strongly disagree with this and certain other elements of the court's ruling, including statements of disputed fact which we believe are not appropriate in a summary judgment ruling, and intend to appeal.

31.     On November 10, 2004, Viisage filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by Individual Defendants and reaffirmed Viisage's financial results announced on October 25, 2004.

32.     The statements contained in ¶¶ 24-30 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that in order to make the Company more attractive to outside lenders and relieve the controlling shareholder from its role as the Company's creditor, Viisage artificially inflated its third quarter profit and made baseless earnings projections; (2) that the Company inflated third quarter profit by improperly recognizing certain corporate benefits, while deferring the recognition of certain corporate expenses; and (3) that

by relying on the inflated profits Viisage was able to secure a credit line, from an outside source, to finance its business operations.

### The Truth Begins To Emerge

33.     On February 7, 2004, Viisage issue a press release entitled "Viisage Provides Preliminary Full Year 2004 Financials; Company meets revenue guidance; net income and EBITDA below expectations." Therein, the Company stated:

> BILLERICA, Mass.--(BUSINESS WIRE)--Feb. 7, 2005--Viisage (NASDAQ: VISG), a leading provider of advanced technology identity solutions, announced today that, on a preliminary basis, it expects full year 2004 revenues to fall within the range of the Company's latest guidance. Earnings before interest, taxes, depreciation and amortization (EBITDA) and net income are expected to fall below guidance. The expected shortfall is primarily due to several non-recurring factors, including a non-cash impairment charge of $2 million in connection with a settlement involving the Company's previous drivers' license contract with the Georgia Department of Motor Vehicle Safety, which had been litigated. This charge was a result of a judge's ruling in the fourth quarter, which the Company is currently appealing.
>
> In issuing its results for the third quarter of 2004 on October 25, 2004, the Company had increased its guidance for 2004, anticipating revenues for the full year in the range of $66-68 million, with EBITDA between $11.5-12.5 million, while maintaining net income guidance as a loss of $1.5 million for the year.
>
> Based upon the preliminary review of its financial results for the year, Viisage now expects revenues of approximately $66-67 million, and EBITDA of approximately $8-9 million. Net income, which includes the $2 million impairment charge related to the terminated Georgia contract, is anticipated to be a loss of approximately $7-8 million. The primary drivers of the shortfall in operating performance are related to non-recurring charges, timing associated with contracts and a temporary increase in certain operating expenses. Viisage believes that these results do not reflect a change in the underlying fundamentals of the business. Specifically, fourth quarter results were impacted by the following:

-- Georgia - the non-cash write-down of certain assets related to the terminated Georgia contract reduced pre-tax income by $2 million in the fourth quarter but did not affect EBITDA.

-- Tax Liability - in the fourth quarter, the Company filed an election under Internal Revenue Tax Code Section 338(h)10 to treat its acquisition of TDT as an asset transaction for tax purposes. This election may generate approximately $8.5 million of future tax benefits. In connection with this election, an initial deferred tax asset of approximately $900,000 was created. Based on Viisage's history of tax losses, the Company had to provide approximately $900,000 for a valuation reserve against the deferred tax asset in the fourth quarter. This provision did not affect EBITDA.

-- Timing - deliveries on several substantial, high margin contracts, including a State of Florida Department of Highway Safety document authentication contract and a major European border management project, slipped from the fourth quarter of 2004 into the first half of 2005. This resulted in decreased revenue and an overall lower margin revenue mix for the quarter. Viisage estimates that these contracts would have contributed more than $1 million of gross profit directly affecting EBITDA and net income in the fourth quarter.

-- Sarbanes-Oxley Section 404 Compliance - despite work undertaken in prior quarters, Viisage experienced higher than anticipated costs related to its Sarbanes-Oxley compliance efforts. In the fourth quarter alone, compliance-related costs totaled $550,000. These expenses are expected to decrease dramatically going forward.

-- Currency - Viisage experienced a significant negative impact from the weak dollar, resulting in an approximately $500,000 decrease in EBITDA and net income in the fourth quarter. In light of the continued growth in its overseas revenue, the Company is considering various ways of mitigating future currency risks.

-- Legal and Other Charges - there were a number of charges in the fourth quarter related to specific legal matters that are now completed or winding down, as well as severance payments, that together totaled approximately $500,000.

"We continue to be very pleased with our top line growth, as we produced approximately $66-67 million in revenue this year, compared to $37 million in 2003," said Bernard Bailey, president and

chief executive officer of Viisage. "We also are encouraged that our business continues to generate increased positive cash flow, with EBITDA growing substantially to an estimated $8-9 million this year from $2.3 million in 2003. We believe that investing aggressively in our company, amid the substantial market opportunity, while continuing to generate positive cash flow, is the best way to optimize the Company's long-term shareholder value in a high growth environment."

The Georgia drivers' license contract litigation has concluded with the state planning to conduct a new procurement for its drivers' license program. However, the status of Viisage's previously-awarded $2.5 million settlement from the state in connection with the termination of the contract has not been resolved. While the state has agreed to pay the amount to Viisage, the presiding judge reduced that payment by $2 million in her December summary judgment ruling. Viisage believes that it is appropriate to take a non-cash write-down of $2 million in the fourth quarter of 2004 for an impairment charge to assets currently on its balance sheet, although the Company continues to maintain the validity of its position in terms of the settlement and is appealing the judge's ruling.

34.    News of this shocked the market. Shares of Viisage fell $1.36 per share or 18.71

percent, on February 8, 2005, to close at $5.91 per share.

35.    On March 2, 2005, Viisage reported final results for its fourth quarter and year ended

December 31, 2004. More specifically, the Company, in its press release, stated:

For the fourth quarter, revenues were $19.0 million, an 84 percent increase over $10.3 million in the same period last year. The net loss for the fourth quarter of 2004 was $5.2 million, or $0.11 per fully diluted share, which includes the impact of the previously disclosed $2 million impairment charge of contract assets related to the terminated State of Georgia drivers' license contract, and a $900,000 non-cash deferred tax expense. In the 2003 fourth quarter, the Company reported a net loss of $1.4 million or $0.06 per fully diluted share. The 2004 fourth quarter results include the contribution from the acquisition of Imaging Automation, Inc. (iA), which was completed on October 5, 2004.

For the full year 2004, revenues were $67.5 million, an 81 percent increase over revenues of $37.4 million in 2003. The Company's net loss for 2004 was $7.0 million, or $0.18 per basic and diluted share, compared to a net loss of $17.7 million, or $0.82 per fully diluted share, in the prior year, which includes the impact of the one-time charge of $12.1 million or $0.56 per share that the Company recorded in connection with a change in accounting principle. On December 30, 2003, Viisage adopted new accounting rule EITF 00-21,

"Accounting for Revenue Arrangements with Multiple Deliverables," which pertains to revenue recognition for certain long-term contracts, such as Viisage's state drivers' licenses contracts, retroactive to January 1, 2003.

On February 7, 2005, Viisage announced preliminary results for the fourth quarter of 2004, indicating that while the Company achieved its revenue guidance, its net income and EBITDA fell short of expectations reflecting a number of primarily non-recurring factors.

"We are very pleased with our top line growth over the past year, as well as our substantial progress in increasing the cash generation capabilities of our business, at a time when most companies in our space are not producing cash," said Bernard Bailey, president and chief executive officer of Viisage. "This past year represented a significant transformation for Viisage. Completing three major acquisitions, strengthening our balance sheet and expanding our customer base have better positioned us to compete in the burgeoning identity solutions marketplace. We are convinced that our marketplace offers exciting opportunities for Viisage. As a company, we are committed to enhancing our leadership position by continuing to invest in our business going forward."

*\*\**

Financial Outlook for 2005

On an annual basis, Viisage expects to increase total revenues by approximately 8-19 percent over 2004, resulting in revenues in a range of $73-80 million. For the first quarter of 2005, the Company is anticipating revenues between $15-17 million, reflecting transitions on several large contracts. The Company is not sharing specific EBITDA targets, although it anticipates remaining cash flow positive and continuing to increase its cash generation in 2005, compared to

2004. The Company also expects to reach profitability during 2005, excluding the impact of stock option expensing which will commence as of July 1, 2005.

Sarbanes-Oxley Compliance

In connection with the preparation of the Company's consolidated financial statements for the year ended December 31, 2004, the Company determined that it had an internal control deficiency that constitutes a 'material weakness' as defined by the Public Company Accounting Oversight Board's Accounting Standard No. 2. The Company has concluded that it had insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters. As a result, management will be unable to conclude that the Company's internal controls over financial reporting are effective as of December 31, 2004. Therefore, BDO Seidman LLP, the Company's external accounting firm, will issue an adverse opinion with respect to the effectiveness of the Company's internal controls over financial reporting. In addition, as part of the Sarbanes-Oxley Section 404 compliance review, the Company is in the process of reviewing all of its other key internal control processes as well. While the evaluation is ongoing, management believes that it will likely conclude that the Company had significant deficiencies, which could constitute a material weakness, in the control processes around information technology systems as well. The Company is in the process of remediating the material weakness and significant deficiencies, and has devoted substantial resources to assess and take concrete steps to strengthen these internal controls. Management believes that the indicated control deficiencies do not affect the Company's financial strength or business prospects.

36.    On this news shares of Viisage fell another $0.97 per share or 17.73 percent, on

March 3, 2005, to close at $4.50 per share.

## UNDISCLOSED ADVERSE FACTS

37.    The market for Viisage's securities was open, well-developed and efficient at all

relevant times.  As a result of these materially false and misleading statements and failures to

disclose, Viisage's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Viisage securities relying upon the integrity of the market price of Viisage's securities and market information relating to Viisage, and have been damaged thereby.

38.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Viisage's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Viisage's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Viisage and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

40.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Viisage, their control over, and/or receipt and/or modification of Viisage's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Viisage, participated in the fraudulent scheme alleged herein.

41.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

42.     Additionally, after Viisage announced artificially inflated financial results, the Company's controlling shareholder Lau Acquisition Corp. ("Lau") sold 345,000 shares for proceeds of $2,836,400.

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

43.    At all relevant times, the market for Viisage securities was an efficient market for the following reasons, among others:

(a) Viisage stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Viisage filed periodic public reports with the SEC and the NASDAQ;

(c) Viisage regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Viisage was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.    As a result of the foregoing, the market for Viisage securities promptly digested current information regarding Viisage from all publicly-available sources and reflected such information in Viisage's stock price. Under these circumstances, all purchasers of Viisage securities during the Class Period suffered similar injury through their purchase of Viisage securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Viisage who knew that those statements were false when made.

### FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Viisage securities at artificially inflated prices. In furtherance of

this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Viisage securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Viisage as specified herein.

50.     These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Viisage value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Viisage and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Viisage securities during the Class Period.

51.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Viisage's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Viisage securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Viisage's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Viisage securities during the Class Period at artificially high prices and were damaged thereby.

54.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Viisage was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Viisage securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and sales

of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

58.     The Individual Defendants acted as controlling persons of Viisage within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and

their ownership and contractual rights, participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false financial statements filed by the Company with

the SEC and disseminated to the investing public, the Individual Defendants had the power to

influence and control and did influence and control, directly or indirectly, the decision-making of

the Company, including the content and dissemination of the various statements which Plaintiff

contend are false and misleading. The Individual Defendants were provided with or had unlimited

access to copies of the Company's reports, press releases, public filings and other statements alleged

by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of these defendants had direct and supervisory involvement in the

day-to-day operations of the Company and, therefore, is presumed to have had the power to control

or influence the particular transactions giving rise to the securities violations as alleged herein, and

exercised the same.

60.    As set forth above, Viisage and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 21, 2005

**GILMAN AND PASTOR**

By: _____
David Pastor (BBO #391000)
John C. Martland (BBO #322980)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
(781)231-7850

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz, Esquire
Richard A. Maniskas, Esquire
Tamara Skvirsky, Esquire
280 King of Prussia Road,
Radnor, PA 19087
(610) 667-7706

**Attorneys for Plaintiff**

I, (print name) _MIN CHANG_____ ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint and authorizes its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transaction(s) in the **Viisage Technology, Inc. (Nasdaq: VISG)** security that is the subject of this action during the Class Period is/are as follows[1]:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 1000 | Buy on Jun 8 2004<br>Sell on Feb 8 2005 | | Bought Price $10.28<br>Sold Price $5.99 |
| 1500 | Buy on Jun 21 2004<br>Sell on Feb 8 2005 | | Bought Price $9.78<br>Sold Price $5.98 |
| 2000 | Buy Jun 24 2004<br>Sell Jun 24 2004 | | Bought Price $9.10<br>Sold Price $8.86 |
| 2000 | Buy Feb 4 2005<br>Sell Feb 8 2005 | | Bought Price $7.55<br>Sold Price $6.09 |

[1]List additional transactions on a separate sheet of paper, if necessary.

5.    Plaintiff has complete authority to bring a suit to recover for investment losses.

6.    During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): _None_

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of _March___, 2005.

_____
Signature

MIN CHANG
_____
Print Name

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only). Min Chang, Individually and On Behalf of All Others Similarly Situated, v. Viisage Technology Inc., et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [X] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ] II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

   05 10537 MLW

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   Darquea v. Viisage Technology, Inc. No. 05-10438MLW

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [X]    NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division [X]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   N/A    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    David Pastor, Esq. & John C. Martland, Esq.

ADDRESS    GILMAN AND PASTOR, 999 Broadway, Suite 500, Saugus, MA 01906

TELEPHONE NO.    781-231-7850

(Coversheetlocal.wpd - 10/17/02)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MIN  CHANG, Individually and On Behalf of All Others Similarly Situated

**DEFENDANTS**

Viisage Technology Inc., Bernard Bailey, William Aulet, and Denis K. Berube

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Los Angeles County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

05 10537 MLW

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Pastor, Esq.&John C. Martland
Gilman and Pastor, LLP
999 Broadway, Suite 500
Saugus, MA  01906  (781-231-7850)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☒ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **HABEAS CORPUS:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff brings this Class Action for violations of Sections 10(b) & 20(a) of the Exchange Act, 15 U.S.C. secs. 78j(b) and 78t(a) on behalf of persons who purchased or otherwise acquired the securities of Viisage between October 25, 2004 and March 2, 2005 arising from defendants preparation and dissemination of materially

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☒ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE Mark L. Wolf

DOCKET NUMBER 05-10438, 05-10498, 05-10475

DATE  03/18/05    false and misleading information which caused the securities to be purchased at artificially inflated prices during the class period.

SIGNATURE OF ATTORNEY OF RECORD  John C. Martland, Esq.

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____